# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 11-22657-Civ-COOKE/TURNOFF

R.K./FL MANAGEMENT, INC. a Florida
corporation, *et al.*,

      Plaintiffs/Counter-Defendants,

v.

JOHN DOE,
an anonymous person,

      Defendant/Counter-Claimant.

_____/

## PLAINTIFFS' OPPOSITION TO COUNTER-CLAIMANT'S MOTION TO REMAIN ANONYMOUS

Plaintiffs/Counter-Defendants, R.K./FL MANAGEMENT, INC., R.K. ASSOCIATES

VII, INC., 17070 COLLINS AVENUE SHOPPING CENTER, LTD., RAANAN KATZ

("R. Katz") and DANIEL KATZ (collectively, "Plaintiffs"), through their undersigned counsel,

file this Opposition to Defendant/Counter-Claimant's Motion to Remain Anonymous

(the "Motion") filed by *anonymous* Defendant, JOHN DOE ("Counter-Claimant" and "him" or

"his" for ease of reference), as follows:

### I.    ARGUMENT

#### A.    Counter-Claimant Does Not and Cannot Provide Any Specific or Relevant Evidence to Establish That His Purported Fear of Retaliatory Violence is Objectively Reasonable.

In another attempt to evade the ramifications of his misconduct and ensure he can

continue to defame Plaintiffs with impunity, Counter-Claimant *now* argues—more than four

months into this litigation—that he should be able to proceed anonymously with his

Counterclaim and his defense because he purportedly has "a legitimate fear of both physical and mental harm, including those harms being extended to [his family]," and because he has "a justifiable and supportable fear of retaliation, intimidation and possibly physical harm from Defendants or their agents/employees."   Motion at p. 4.   Counter-Claimant's conclusory, unsubstantiated *and newly manufactured* claim of *possible* retaliation fails to establish an objectively reasonable and legitimate basis for protecting Counter-Claimant's identity.   *See E.E.O.C. v. ABM Industries, Inc.*, 249 F.R.D. 588, 594 (E.D. Cal. 2008) ("Applicants must show that their fear is objectively reasonable" in order to proceed anonymously).

For example, in *Doe v. Beaumont Independent School District*, anonymous plaintiffs who challenged the constitutionality of a religious school program argued that that their stance against the religious program, coupled with past instances where other plaintiffs had suffered retaliation for challenging similar programs, demonstrated "a substantial likelihood they will suffer reprisals should their identities be revealed." 172 F.R.D. 215, 216 (E.D. Tex. 1997). Comparing the facts of the case to those present in *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), which permitted a plaintiff to remain anonymous because of the *actual* threats of violence generated by that case and other aggravating factors, the court denied the plaintiffs' request to remain anonymous, and held:

> Unlike the court in *Stegall*, this Court finds no 'other factors' necessarily present in this case; and, unlike the record in *Stegall*, the record in this case contains no threats of violence. In fact, there is no record of threats against Plaintiffs personally of any kind since they filed suit more than three months ago. Plaintiffs' argument here rests largely on 'the history of violence and other reprisals against children and their families who have elsewhere challenged school-sponsored religious exercises.' ***This Court finds this type of 'it has happened before, therefore it might happen here' argument to be insufficient to justify a protective order concealing Plaintiffs' identities.***

*Id.* at 217 (emphasis added).

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., SUITE 1700, MIAMI, FL 33131 305.379.9000

Similarly, in *Qualls v. Rumsfeld,* soldiers who challenged certain military administrative policies sought to proceed anonymously claiming that they were "fearful of retaliation," and claiming that if their identifies were disclosed it could result in "retaliatory conduct that could lead to Doe plaintiffs' injury or death while serving in combat." 228 F.R.D. 8, 11-12 (D. D.C. 2005). Finding that the declarations submitted by the anonymous plaintiffs failed to establish any *actual* "risk of physical or other injury to Doe plaintiffs that would be necessary to permit them to proceed under pseudonyms," the court denied the plaintiffs' request, and held that *"fears of embarrassment or vague, unsubstantiated fears of retaliatory action by higher-ups do not permit a plaintiff to proceed under a pseudonym."* *Id.* at 12 (emphasis added); *see also Doe v. Von Eschenbach,* 2007 WL 1848013 at \*2 (D. D.C. June 27, 2007) (military personnel who challenged the reinstatement of mandatory anthrax inoculations were not permitted to proceed anonymously because the plaintiffs "fears of retaliation are vague and unsubstantiated," and the only example of retaliation that plaintiffs actually identified occurred "more than seven years ago").

Moreover, in *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,* the plaintiffs sought to remain anonymous in their action challenging the defendant's policy of granting a "preference" to admit students on the basis of "Hawaiian ancestry." 2008 WL 4755674 (D. Hawai'i October 28, 2008). "As evidence of threats of harm that Plaintiffs fear, they point to comments made about a student who previously challenged Defendants' admission policy, to acts of physical violence in the community, and to internet communications regarding Plaintiffs in this case." *Id.* at \*3. Because "none of Plaintiffs' evidence show[ed] any threat of physical violence or economic harm against Plaintiffs," without corroborating evidence their parents' declarations which cited their "subjective fear of such retaliation" was insufficient to warrant anonymity. *Id.* at \*4-5; *see also Freedom From Religion Foundation v. Cherry Creek School*

*District #5,* 2009 WL 2176624 at \*6 (D. Colo. July 22, 2009) (plaintiffs who relied on three anecdotal accounts of religious discrimination and harassment were ordered to disclose their identities despite their *unopposed* motion to remain anonymous because "Plaintiffs have not presented any evidence that reflects disapproval of the instant lawsuit within the relevant community or suggest they would be the target of actual threat, harassment or retaliation."); *compare with ABM Industries, Inc.,* 249 F.R.D. at 594 (permitting eight plaintiffs to proceed anonymously where there was evidence that one of the defendant's employees was previously convicted of a violent crime, had already committed violent crimes against some of the plaintiffs, and that the employee had access to the plaintiffs "at the workplace as a consequence of his job as a supervisor"); *and Doe v. Kolko,* 242 F.R.D. 193, 196-97 (E.D. N.Y. 2006) (plaintiff claiming that he was sexually abused by a rabbi at a private Jewish school was permitted to proceed anonymously because the plaintiff's fear that he would suffer intimidation and retaliation by members of the Orthodox Jewish community was supported by testimony from the plaintiff's psychologist, evidence that "an official of the Yeshiva warned family members of victims of Rabbi Kolko that if they pursued claims, they would be shunned by the Orthodox Jewish community and their other children would be expelled from the Yeshiva and prevented from attending other yeshivas in the New York area," and specific examples where another accuser of the rabbi received threats including, "We're gonna get your family.").

Here, Counter-Claimant has failed to articulate any *specific* evidence to substantiate that he has an *objectively* reasonable fear of retaliatory violence *against him* if his identity is disclosed. *See ABM Industries, Inc.,* 249 F.R.D. at 594. To begin with, Counter-Claimant has not provided any actual or relevant examples to support his contention that "Mr. Katz has demonstrated and DOE has documented many instances of aggressive, abusive behavior…and potential violence that Mr. Katz has shown himself to be capable of." Motion at p. 5.

4

While, Counter-Claimant cites to various legal actions brought by Plaintiffs or their related entities as supposed evidence of Plaintiffs' "continued bad faith and aggressive litigation tactics," these allegations have nothing to do with Counter-Claimant's alleged fear of actual violence. *See* Counter-Claimant's Declaration ("Declaration") at ¶ 17 and Exhibit "E" thereto. In fact, because Plaintiffs are already suing Counter-Claimant in this proceeding (and Counter-Claimant is also counterclaiming against Plaintiffs), Counter-Claimant's assertion that Plaintiffs "will retaliate against me and my family with frivolous litigation" is moot.

Moreover, while Counter-Claimant cites an article which quoted R. Katz saying that he had ties to Israeli commandos and telling someone "he had better watch himself and his family," Counter-Claimant ignores the fact that the article was written *over fifteen (15) years ago*, the alleged quote did not even come directly from R. Katz but through a version of a story heard by "intermediaries," and in the article R. Katz was quoted directly as saying, *"[I]t is outrageous to say I threatened to kill him and his family...Never in my life have I done anything that resulted in any illegal violence. I swear on my children and my life that I didn't threaten to kill Dave Checketts."* *Id.* at Exhibit "A." And while Counter-Claimant cites to another recent article, that article simply discusses this lawsuit, contains quotes from Counter-Claimant's own attorneys and the undersigned, and the article itself is believed to have been manufactured by Counter-Claimant to promote his own agenda (as implicitly corroborated by the reporter who interviewed Plaintiffs' counsel). *Id.* at Exhibit "B."

Furthermore, there are absolutely no instances in any of the blogs postings at issue in this case pertaining to any acts of violence perpetrated by any of the Plaintiffs. In fact, while Counter-Claimant cites to an anonymous blog posting which described R. Katz as being "crude" and "feared," Counter-Claimant ignores the fact that *in that very same blog* another anonymous blogger (who was not the Counter-Claimant) stated as follows:

Don't know if he's a public figure or not, but I was a tenant of theirs for more than a decade, and they always treated me fairly in the years I was involved with them. Their office staff was always pleasant, and Mr. Danny Katz, who seemed to handle much of the day to day operations, was always professional and personable. The guys who did a great job of maintenance on our plaza, I would consider my friends. I'd lease from RK again in a heartbeat. My location was like all of the other RK properties: clean, well maintained, and usually full of tenants.

Listen, it's silly to believe anybody, including the Katz, family, would be loved by everyone-*one of those that don't like him just happens to want free reign to denigrate him publicly. From what I personally know of the Katz's, it doesn't surprise me that they wouldn't take kindly to a person publishing a blog that while linking to new stories, also contains a significant amount of derogatory, anti-Semitic commentary.* Being rich doesn't make one a public figure. Owning lots of stuff doesn't make a person a public figure. While his initials are indeed part of his company's ubiquitous logo, a well-placed, visible company logo doesn't make one a public figure either.

Declaration at ¶ 13, Exhibit "B" (emphasis added).

The only allegation Counter-Claimant makes that even attempts to create an *objectively* reasonable fear of violent retaliation is his own conclusory and self-serving statement that "[o]n several occasions one or more of RKA Plaintiffs, or their agents/employees, have harassed and threatened me with physical harm, violence, and intimidation." *Id.* at ¶ 11. Yet, Counter-Claimant fails to provide any detail to support or substantiate this statement, such as when these supposed events occurred, where they took place, who was involved, what specific (or even general) statements were made to Counter-Claimant, what specific actions Plaintiffs took, how Counter-Claimant was harassed, threatened and intimidated, or whether there were any witnesses to corroborate Counter-Claimant's assertion. *Id.* at ¶ 11; *see also Dunford v. Rolly Marine Service Co,* 233 F.R.D. 635, 636 (S.D. Fla. 2005) ("The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or

speculative statements about the need for a protective order and the harm which will be suffered without one.").

It is clear that Counter-Claimant's self-serving and unsubstantiated fear of violent retaliation from Plaintiffs is nothing more than a newly manufactured excuse to remain anonymous so that he can avoid the ramifications of his illegal actions and continue defaming Plaintiffs with impunity.[1] As further discussed below, the circumstances of this case mandate that Counter-Claimant's identity must be revealed.

**B.    Plaintiffs' Need for the Disclosure of Counter-Claimant's Identity Far Outweighs His Alleged Need for Privacy.**

"Plaintiffs may preserve their identity if they prove the severity of their threatened harm, the reasonableness of their fears, and their vulnerability outweigh the prejudice to Defendants and the public's interest in knowing their identity." *Kamehameha*, 2008 WL 4755674 at *8. *Where a party fails to show that their need for anonymity outweighs the opposing party's prejudice, "there is no need to deviate from the presumption, firmly rooted in American law, of openness in judicial proceedings." Id.* (emphasis added).

Counter-Claimant has failed to establish any true need for anonymity. As shown above, Counter-Claimant has failed to establish that he would suffer any actual physical harm if his identity is disclosed in this action. Counter-Claimant has also failed to establish that his manufactured fear of retaliatory violence if his identity is disclosed is *objectively* reasonable. *See ABM Industries, Inc.*, 249 F.R.D. at 594.

*Conversely, permitting Counter-Claimant to proceed anonymously poses a unique threat of fundamental unfairness to Plaintiffs.* The substantive issues in this case rest squarely

---

1.    It is also clear that Counter-Claimant allegations that R. Katz was held in contempt of court *over thirty (30) years ago*, and that R. Katz engaged in racial discrimination almost *forty years (40) ago,* have nothing to do with the issues in this case and are merely another deplorable attempt to prejudice this Court against Plaintiffs. *See* Declaration at ¶¶ 14, 17.

on Counter-Claimant's identity. The disclosure of Counter-Claimant's identity is critical to enable Plaintiffs to prove, if necessary, that he acted with "actual malice" as Counter-Claimant argues Plaintiffs must do. Counter-Claimant's identity is also critical to issues of intent and motive, and for Plaintiffs to demonstrate to the Court why Counter-Claimant lacks any credibility. Counter-Claimant's identity must also be revealed in order for Plaintiffs and the Court to determine other forums wherein Counter-Claimant is publishing defamatory statements.

Perhaps more significant are the additional issues Counter-Claimant himself injected into this lawsuit. Specifically, Plaintiffs must be able to determine whether Counter-Claimant is a competitor in order to respond to his affirmative claim for declaratory relief based on purported fear of Lanham Act claims by Plaintiffs.[2] *See Furniture "R" Us, Inc. v. Leath Furniture, LLC,* 2008 WL 4444007 (S.D. Fla. Sept. 26, 2008) (noting that for a Lanham Act claim to exist, the defendant must be in competition with the plaintiff). Moreover, Counter-Claimant has argued he is a "media defendant" and a "citizen journalist." At the same time, however, Counter-Claimant refuses to reveal his identity, and whether, for example he is actually a disgruntled employee, a former tenant, an adversary in a different lawsuit, or countless other things that would quickly dispel with Counter-Claimant's arguments.

While Counter-Claimant continues to post defamatory statements about Plaintiffs on his blog, without knowing his identity and being able to properly respond to his claimed defenses, Plaintiffs are seriously hindered in their ability to respond to Counter-Claimant's defenses and

---

2. Although Plaintiffs dismissed their Lanham Act claim *with prejudice* well before Counter-Claimant filed his Counter-Complaint, Counter-Claimant argues in the Motion that he is affirmatively "seeking a declaration of rights under the Lanham Act, since there remains continuing allegations in RKA's Complaint (DE 1-3) and DOE is subject to these allegations of an ongoing tort by RKA." Motion at p. 6. Counter-Claimant's argument demonstrates why his Counter-Complaint should be dismissed, and further establishes the obviousness of his attempt to manufacture federal jurisdiction where it no longer exists. Indeed, why else would Counter-Claimant seemingly admit to committing a federal ongoing tort when Plaintiffs are clearly not pursuing any such claims?

obtain the relief to which Plaintiffs are entitled. *See, e.g., Doe v. Merten,* 219, F.R.D. 387, 394 (E.D. Va. 2004) (plaintiff could not proceed anonymously where her standing to maintain the suit was at issue because "Defendants, of course, must in fairness be allowed to explore whether plaintiffs having standing, which they can do only if plaintiffs are identified."); *Kamehameha,* 2008 WL 4755674 at \*8 (denying the plaintiff's request for anonymity because, among other things, "Defendants will be prejudiced as to their standing-related discovery").

Despite the fact that Counter-Claimant has failed to establish any need for anonymity, Plaintiffs are posed with the unique threat of fundamental unfairness, and have no present ability to stop Counter-Claimant from continuing to post defamatory statements about Plaintiffs on a daily basis. Thus, Counter-Claimant's identity must be revealed. *Id.* ("If Plaintiffs have not asserted enough to establish a need for anonymity, this cannot outweigh the prejudice to the Defendants.").

Counter-Claimant cannot be permitted to use his anonymity as both a sword and shield to defame Plaintiffs with absolute immunity. *See Doe v. Shakur,* 164 F.R.D. 359, 362 (S.D. N.Y. 1996) (denying a plaintiff's request to proceed anonymously because the defendant "would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity"). Given the length of time since Plaintiffs filed their Motion for Remand and other motions, Counter-Claimant has recently been posting unlawful attacks against Plaintiffs and their undersigned attorneys with even greater frequency, vigor and venom. It is apparent that Counter-Claimant has no present concern of any legal repercussions as a result of his improper acts, and Counter-Claimant has accordingly continued to secretly post twisted, mischaracterized, distorted attacks against Plaintiffs, their attorneys, and the lawful positions and remedies Plaintiffs and their attorneys have been pursuing. Counter-Claimant's defamatory tirades must be stopped, and Counter-

9

Claimant's identity must be revealed in order for Plaintiffs to properly respond to Counter-Claimant's contrived arguments.

### C. Counter-Claimaint's Identity Must be Disclosed for Legitimate Legal Reasons and Plaintiffs Have No Ulterior Motive in Seeking His Identity.

In the Motion, Counter-Claimant argues that Plaintiffs' "main motive in this case is to find out the identity of DOE" because Plaintiffs have yet to seek injunctive relief against him to stop his defamatory campaign. Motion at p. 5. Counter-Claimant therefore argues that if his identity was disclosed, "the exact thing that DOE seeks to protect would be lost." *Id.* For a number of reasons, Counter-Claimant's argument fails.

First, Counter-Claimant ignores the fact that on multiple occasions Plaintiffs have demanded that he cease making defamatory remarks about Plaintiffs on his blogs, and that he immediately remove all such materials. For example, on July 25, 2011, after Counter-Claimant's counsel first appeared in this case (and Plaintiffs' counsel first had an identifiable person with whom to communicate), and the day before the Counter-Claimant filed his Notice of Removal, Plaintiffs' counsel sent Counter-Claimant's counsel an email highlighting specific defamatory blog postings, and demanded that Counter-Claimant "immediately stop posting, and immediately remove any and all trace of, all defamatory remarks and articles they have posted on the internet and elsewhere" regarding Plaintiffs. In addition to various conversations among counsel and the positions taken in the papers filed in this Court, on October 14, 2011 Plaintiffs' counsel reiterated Plaintiffs' prior demands and sent Counter-Claimant's counsel another email demanding that Counter-Claimant stop his defamatory campaign against Plaintiffs, and demanding that Counter-Claimant immediately remove all defamatory material regarding Plaintiffs from the blog. Again on October 26, 2011, Plaintiffs' counsel emailed Counter-Claimant's counsel and again demanded that Counter-Claimant's remove his defamatory entries

10

regarding Plaintiffs. Copies these emails are attached hereto as Composite Exhibit "A." Yet despite these demands, Counter-Claimant has not only refused to remove his defamatory statements from his blogs, but has continued to post defamatory remarks on his blogs. Copies of some of the recent blog postings are attached hereto as Composite Exhibit "B."

Contrary to Counter-Claimant's misplaced argument, and despite the clear defamatory nature of Counter-Claimant's actions, Plaintiffs are currently unable to seek a preliminary injunction against Counter-Claimant, as injunctive relief is not available to enjoin defamation until there has been a finding or an admission that the statements are defamatory (which Plaintiffs may also be unable to obtain until they know Counter-Claimant's identity so that they can establish the elements necessary for injunctive relief. *See, e.g., Renoir-Large v. Lane*, 2011 WL 3667424 at *4 (S.D. Ohio July 20, 2011) (denying a request to enjoin alleged defamation because "there has been no final determination that defendant's statements are false and libelous"); *J.K. Harris & Co., LLC v. Kassel*, 253 F. Supp. 2d 1120, 1129 (N.D. Cal. 2003) (refusing to enjoin alleged defamation because "enjoining these statements prior to an adjudication of their truth or falsity would suppress arguably protected speech").

Plaintiffs' motives are clear and, in fact, have been put to Counter-Claimant, his counsel, and this Court in writing: put a stop to Counter-Claimant's continued barrage of defamatory remarks about Plaintiffs on his blogs, which can only be accomplished if Counter-Claimant is forced to disclose his identify and answer for his conduct. On the other hand, it is abundantly clear that the *only* reason Counter-Claimant has gone to such great lengths to protect his identity is because he knows that once it is disclosed, he will have no way to defend against Plaintiffs' claims, and will most certainly be held accountable in a court of law for his improper actions. Any purported "harm" Counter-Claimant would suffer if his identity is disclosed is self-inflicted, and thus his Motion must be denied.

**D.    Counter-Claimant Cannot Establish Any Substantial Privacy Right that Outweighs the Significant Public Interest In this Action.**

The purpose of Rule 10(a)'s requirement that that every pleading in federal court "must name all the parties" is to "protect the public's legitimate interest in knowing all the facts involved, including the identities of the parties." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011); Fed. R. Civ. P. 10(a).   Parties must therefore proceed in their own names because they "have the right to know who their accusers are, as they may be subject to embarrassment or fundamental unfairness if they do not." *Francis*, 631 F.3d at 1315; *see also Doe v. Smith,* 429 F.3d 706, 710 (7th Cir. 2005) ("[T]he plaintiff has denied [the defendant] that shelter of anonymity—yet it is [the defendant], and not the plaintiff, who faces disgrace if the complaint's allegations can be substantiated.  And if the complaint's allegations are false, then anonymity provides a shield behind which defamatory charges may be launched without shame or liability."). For this reason, "[t]he ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Kamehameha* , 2008 WL 4755674 at * 2.

Here, Counter-Claimant cannot establish any substantial privacy right to overcome the "clear and strong First Amendment interest in ensuring that what transpired in the courtroom is public property." *Id.*  This matter is not one that involves a challenge to governmental activity. *See Francis*, 631 F.3d at 1315.   Nor will Counter-Claimant "be compelled to admit [his] intention to engage in illegal conduct and thus risk criminal prosecution." *Id.*  Nor will Counter-Claimant be required to disclose information of the utmost intimacy generally found in cases involving "abortion, mental illness, personal safety, homosexuality, transsexuality and

illegitimate or abandoned children in welfare cases." *Doe v. Bell Atlantic Business Sys. Servs., Inc.,* 162 F.R.D. 418, 420 (D. Mass. 1995); *accord Merten,* 219 F.R.D. at 392.

Counter-Claimant argues there is a strong public interest in maintaining his privacy as a self-proclaimed "citizen journalist." Motion at p. 7. This is another of Counter-Claimant's creations, which he manufactured to take advantage of a statute that is only available to the media. As stated in Plaintiffs' prior filings in this case, Fla. Stat. § 770.01 does not apply, and Counter-Claimant is clearly not a "journalist," and is not a member of "media." Even if the statute did apply (and Plaintiffs steadfastly maintain that it does not), Plaintiffs complied with the statute by sending the written demands to Counter-Claimant's counsel as discussed above. Unlike a true journalist or media defendant, there was no way to contact Counter-Claimant without Plaintiffs' exacerbating their damages by increasing the visibility of, and lending a degree of unwarranted credibility to, the Blogs. Despite the fact that Counter-Claimant mocks this reality in one of his recent condescending blog posts, the fact remains that he was provided with notice, months ago and continuing thereafter, that his blogs are defamatory, yet he arrogantly marches on, continuing to post defamatory blogs and continuing to manufacture frivolous arguments in this Court. However, because Counter-Claimant remains insistent that he is a journalist, Counter-Claimant must be compelled to disclose his identify so Plaintiffs and the Court can probe this position. *See, Merten,* 219 F.R.D. at 394; *Kamehameha,* 2008 WL 4755674 at *8.

It is clear there is <u>no</u> public interest in protecting Counter-Claimant's anonymity to enable him to avoid prosecution for, and continue, his defamatory conduct. *See Smith*, 429 F.3d at 710 (anonymity may not be used "a shield behind which defamatory charges may be launched without shame or liability"). It is equally clear that Counter-Claimant has failed to establish any substantial privacy interest that would trump the public's paramount interest "in knowing all the

13

facts involved, including the identities of the parties." *Francis*, 631 F.3d 1315. Indeed, the very reason Counter-Claimant proclaims himself as a "citizen journalist" is to ensure the public's right to information, and further the very interest in "openness in judicial proceedings" that he now seeks to limit so he can avoid liability for his own illegal actions. *See* Declaration at ¶ 6 ("Since these actions are mainly in state court records which are not readily available on the Internet ("online"), I have taken on the role of citizen journalist to report on these events, in a public forum on the blog websites."). Counter-Claimant has failed to demonstrate any legitimate basis for anonymity, and his Motion must be denied.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter an Order denying Counter-Claimant's Motion to Remain Anonymous, and enter such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: s/Alan J. Kluger
    Alan J. Kluger
    Fla. Bar. No. 200379
    akluger@klugerkaplan.com
    Todd A. Levine, Esq.
    Fla. Bar No. 899119
    tlevine@klugerkaplan.com
    Lindsay B. Haber, Esq.
    Fla. Bar No. 85026
    lhaber@klugerkaplan.com
    KLUGER, KAPLAN, SILVERMAN,
    KATZEN & LEVINE, P.L.
    Miami Center, Seventeenth Floor
    201 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 379-9000
    Facsimile: (305) 379-3428
    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 28, 2011, I electronically filed the foregoing document with the Clerk of Court through the CM/ECF System. **I FURTHER CERTIFY** that a true and correct copy of the foregoing has been furnished via U.S. Mail this 28th day of October, 2011 to: **Robert C. Kain, Jr.,** Kain & Associates, Attorneys at Law, P.A., 900 Southeast Third Avenue, Suite 205, Ft. Lauderdale, Florida 33316.

By: _____ s/Alan J. Kluger _____
Alan J. Kluger

**From:** Todd A. Levine
**Sent:** Monday, July 25, 2011 7:35 PM
**To:** 'Robert Kain'
**Cc:** Darren Spielman; Alan J. Kluger; Lindsay Haber
**Subject:** RK/Fl Mgt v Doe

Bob,

As I previously told you, as your client(s) is/are well aware from its/their receipt of prior communications from my office to Google and blogger.com and as indicated in my email to you dated July 22, 2011, my clients demand that your client(s) (who have been acting anonymously and whom we have therefore been forced to designate as "John Doe") immediately stop posting, and immediately remove any and all trace of, all defamatory remarks and articles they have posted on the internet and elsewhere, including but not limited to those articles that appear on the website located at http://www.rkassociatesusa.blogspot.com/, including but not limited to all of the following articles--each of which are defamatory *per se*:

*How RK Associates Ripped Off The Single Mother Of Special Needs Child*

*Raanan Katz's RK Associates and Alleged Racketeering Claim*

*Raanan Katz Filled Another Frivolous Lawsuit in Miami*

*Public Awareness of RK Associates and Raanan Katz Activities*

*Another RK Associates False Affidavit of Damages ?*

*Raanan Katz' RK Associates Alleged in Theft of Tenant's Property*

*RK Associates Changing Door Locks...Be Careful!*

*RK Associates Allegedly Violates the Lease Agreement*

*RK Associates Commercial Lease - Is It a New Kind of Scam ?*

*Why Raanan Katz Can Get Away With Breaking The Law*

*RK Associates Sued Former Tenant for a Quarter of a Million Dollars under Expired Lease*

*RK Associates' Attempt to Rip-off Florida Doctor Failed*

*Raanan Katz Wants Your Money No Matter What*

*RK Associates and Commercial Lease Fraud*

*Raanan Katz Real Estate Get Rich Scheme*


EXHIBIT
Comp. A

*RK Associates History and Some Facts*

**Our demands have been and are in preservation of, and without waiving, any and all of our clients' legal rights and remedies.  Govern yourselves accordingly.**

**Todd A. Levine**
Attorney
TLEVINE@klugerkaplan.com



Kluger, Kaplan, Silverman, Katzen & Levine, P.L.
201 S. Biscayne Blvd., Seventeenth Floor
Miami, FL  33131
T. 305-379-9000
F. 305-379-3428
www.klugerkaplan.com

NOTICE  The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, the employee or agent responsible for delivering this message in confidence to the intended recipient, you are hereby notified that you should have read this transmission in error, any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and or attachments in error, please, notify me immediately by return e-mail and then delete this message, including any attachment.

**From:** Todd A. Levine
**Sent:** Friday, October 14, 2011 4:13 PM
**To:** 'Robert Kain'
**Cc:** Alan J. Kluger; Lindsay Haber
**Subject:** Demand for Retraction

Bob,

Your client has begun posting defamatory blog entries again. As I have done with previous blog entries, I hereby demand that your client immediately retract these entries as well.

The entry posted on October 11 is entitled "Raanan Katz v. Blogger: Liar, Liar, Pants on Fire." The blog specifically attacks me and my firm in our trade or profession and is defamatory *per se*. The entry mischaracterizes my Declaration and calls me a "liar." As you and your client should know, paragraphs 12 and 13 of my Declaration are separate statements. Although it is a fact that Judge Manno Schurr was provided with every blog entry that existed as of the date of the hearing, obviously she could not have read entries that had not yet been published (and I in no way said she did). Paragraph 13 of my Declaration reveals the names of some of the blog entries that have been posted as of the date of my Declaration and which are subjects of your client's ongoing defamatory misconduct, but does not state that those entries existed at the date of the hearing. The Declaration is in no way false, and it is defamatory to call me and my firm liars, as your client's accusation goes to the heart of our profession. If your client does not immediately withdraw this entry, we will take all necessary and appropriate action.

The entry posted on October 12 entitled "Raanan Katz Gets Jackpot Through Default" is also misleading and defamatory. Your client's "facts" are not correct, and again attack my clients in their trade or profession and are defamatory *per se*. Your client is intent on misconstruing legitimate business practices. Moreover, the article fails to acknowledge that my client did not collect on the judgment, and merely incurred expenses properly pursuing its contractual rights in obtaining a judgment against a tenant that was in default of its lease. Thus, this entry must also be immediately retracted.

Demand is again made for your client to cease posting defamatory material on the blog, and to immediately remove all of the defamatory entries from the blog. As you know, in addition to the lastest postings, the defamatory materials include the following:

*How RK Associates Ripped Off The Single Mother Of Special Needs Child*

*Raanan Katz's RK Associates and Alleged Racketeering Claim*

*Raanan Katz Filled Another Frivolous Lawsuit in Miami*

*Public Awareness of RK Associates and Raanan Katz Activities*

*Another RK Associates False Affidavit of Damages ?*

*Raanan Katz' RK Associates Alleged in Theft of Tenant's Property*

*RK Associates Changing Door Locks...Be Careful!*

*RK Associates Allegedly Violates the Lease Agreement*

*RK Associates Commercial Lease - Is It a New Kind of Scam ?*

*Why Raanan Katz Can Get Away With Breaking The Law*

*RK Associates Sued Former Tenant for a Quarter of a Million Dollars under Expired Lease*

*RK Associates' Attempt to Rip-off Florida Doctor Failed*

*Raanan Katz Wants Your Money No Matter What*

*RK Associates and Commercial Lease Fraud*

*Raanan Katz Real Estate Get Rich Scheme*

*RK Associates History and Some Facts*

**These demands are in preservation of, and without waiving, any and all of our and our clients' legal rights and remedies.  Govern yourselves accordingly.**

**Todd A. Levine**
Founding Member
TLEVINE@klugerkaplan.com



KLUGER KAPLAN

Kluger, Kaplan, Silverman, Katzen & Levine, P.L.
201 S. Biscayne Blvd., Seventeenth Floor
Miami, FL 33131
T. 305-379-9000
F. 305-379-3428
www.klugerkaplan.com

NOTICE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s), you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify me immediately by reply e-mail and then delete this message, including any attachments.

**From:** Todd A. Levine
**Sent:** Wednesday, October 26, 2011 11:16 AM
**To:** 'Robert Kain'
**Cc:** Alan J. Kluger
**Subject:** Demand (Again)

Bob,

As I'm sure you know, your client is back at it, and has again posted defamatory materials on his/her blog, again about me, Alan and our firm, attacking us (frivolously) in our trade and profession.   Your client has also been wrongfully attacking our clients again in recent blogs.   Your client's intentional misconduct continues to be shocking and reprehensible.

We again demand that your client withdraw all of his/her defamatory entries, including but not limited to the entries he/she posted over the weekend. As you are aware, we will take all necessary and appropriate action in the appropriate legal forum.

**GOVERN YOURSELVES ACCORDINGLY.**

**Todd A. Levine**
Founding Member
TLEVINE@klugerkaplan.com



KLUGER KAPLAN

Kluger, Kaplan, Silverman, Katzen & Levine, P.L.
201 S. Biscayne Blvd., Seventeenth Floor
Miami, FL 33131
T. 305-379-9000
F. 305-379-3428
www.klugerkaplan.com

NOTICE: The information contained in this email and any document attached hereto is intended only for the named recipient(s). If you are not the intended recipient, nor the employee or agent responsible for delivering this message in confidence to the intended recipient(s), you are hereby notified that you have received this transmittal in error, and any review, dissemination, distribution or copying of this transmittal or its attachments is strictly prohibited. If you have received this transmittal and/or attachments in error, please notify me immediately by reply e-mail and then delete this message, including any attachments.

Share   Report Abuse   Next Blog»                                      Create Blog   Sign In

# RK Associates

**FOLLOWERS**

**TUESDAY, OCTOBER 11, 2011**

## Raanan Katz v Blogger: Liar, Liar, Pants on Fire

I know you haven't seen many recent reporting about Raanan Katz and his companies, but hopefully this pleadings will provide some additional insight.

As you know Raanan Katz and his companies represented by KLUGER, KAPLAN, SILVERMAN, KATZEN, LEVINE Law Firm.

Katz's attorney Todd Levine made Declaration in opposition to Defendant's (Blogger) Motion for Reconsideration of Order Denying Motion to Quash and for Protective Order.

Raanan Katz and his attorneys are trying to convince the federal court that :

"12.During the hearing, Judge Manno-Schurr carefully considered, *inter alia*: (a) Defendant's Motion to Vacate Hearing; (b) Defendant's Motion to Quash; (c) the arguments and case Defendant cited in his Motion to Quash;(d) the actual blog entries Defendant posted on the blog that are the subject of this case; (e) Defendant's Request for Production of Documents and Request for Admissions; and (f) Fla.R.Jud.Adm.2.515(b) and case law construing the rule.

13. Defendant's blog entries include, but are not limited to, articles entitled "R.K.Associates' Attempts to Rip-Off Florida Doctor Failed", "Why Raanan Katz Can Get Away with Breaking the Law", and "How RK Associates Ripped Off the Single Mother of Special Needs Child."

According to Raanan Katz, Daniel Katz, and RK Associates' attorney the article "How RK Associates Ripped Off the Single Mother of Special Needs Child" was carefully considered on *July 12, 2011* hearing, but the article was written and posted to the blog on *July 24, 2011.*

Raanan Katz, Daniel Katz, and RK Associates' attorney concluded the declaration:
"I hereby declare that all statements made herein are of my own knowledge and are true and correct and all statements made on information and believe are believed to be true; and further that this statements are made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C.1001."

*Good try Todd Levine!! You are very instrumental in helping Raanan Katz and RK Associates.*

Posted by alwaystrue at 6:25 PM                                      0

Labels: raanan katz, raanan katz declaration, raanan katz lier

## 0 comments:

## Post a Comment

Join this site 
with Google Friend Connect

Members (1)



Already a member? Sign in

**BLOG ARCHIVE**

▼ 2011 (24)
   ▼ October (2)
      Raanan Katz Gets Jackpot Through Default

      Raanan Katz v Blogger: Liar, Liar, Pants on Fire

   ► July (3)

   ► June (7)

   ► May (12)



EXHIBIT "B"

Comment as:   Select profile...

Post Comment     Preview


Newer Post                    Home                         Older Post

Subscribe to: Post Comments (Atom)


Simple template. Powered by Blogger.

10/14/2011 10:07 AM

# Tuesday, October 25, 2011

### Raanan Katz, Daniel Katz Filed Frivolous Lawsuit to Zip The Blogger's Mouth Up?

The Katzs lawsuit for defamation *per se* and libel continues their long history of being wrong on the law and wrong on the public.

The Blogger's attorneys *Kain*, *Spielman, and Randazza* argue "It has become clear, that RKA's main motive in this case is to find out the identity of DOE . RKA's litigation tactics and actions speak for themselves. RKA has never properly sought a TRO (Temporary Restraining Order) or preliminary injunction to takedown the alleged defamatory material. Instead RKA has devoted much time and effort in this Court and in the State Court proceedings arguing over the revelation of DOE's identity. This true intent must not be overlooked."

Katzs attorneys Kluger, Levine state "that Plaintiffs (Raanan Katz, Daniel Katz et al) are currently unable to seek a preliminary injunction against Counter-Claimant for his continuous defamatory statements on the Blog, as…injunctive relief is not available to enjoin defamation until there has been a **finding** or an admission that the statements are defamatory."

According to **Lynn Walsh, BrowardBulldog.org** "Levine (Katz's attorney) said some content posted by John Doe (Blogger) is accurate, but the lawyer did not elaborate on what was true."

According to Tim Elfrink Miami New Times "…, Levine has strong words for anyone who would consider writing about Katz's lawsuit. "I'd ask you not to publish anything about this," he says. "Even pointing people toward that blog could constitute further defamation."



Why Raanan Katz and Daniel Katz have not sought temporary restraining order or preliminary injunction to takedown the alleged defamatory blog?

Posted by alwaystrue at 6:56 PM
Email ThisBlogThis!Share to TwitterShare to Facebook
Labels: daniel katz, lawsuit, raanan katz

# Tuesday, October 25, 2011

### Kluger, Kaplan, Silverman, Katzen & Levine Law Firm: Blogger Is Clearly Not A "Journalist"

Raanan Katz and Daniel Katz attorneys Levine, Kluger argue "Defendant (Blogger) is clearly not a "journalist."

Free Encyclopedia Wikipedia defines Journalist:

"A journalist collects and distributes information about current events, people, trends, and issues. His or her work is acknowledged as journalism.

A reporter is a type of journalist who researches and presents information in certain types of mass media.

Mass media refers collectively to all media technologies, including the Internet, television, newspapers, film and radio, which are used for mass communications, and to the organizations which control these technologies.

Reporters gather their information in a variety of ways, including tips, press releases, sources (those with newsworthy information) and witnessing events. They perform research through interviews, public records, and other sources.

Justin Hall, is an American freelance journalist who is best known as a pioneer blogger (internet-based diarist), and for writing reviews from game conferences such as E3 as well as the Tokyo Game Show."

Posted by alwaystrue at 6:54 PM
Email ThisBlogThis!Share to TwitterShare to Facebook
Labels: alan kluger, miami law firm, todd levine